

# Your Missouri Courts

Case.net

## 2122-CC00279 - RICHARD E BROWN V KEVIN M BARONI (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |
|---|---|---|---|---|---|---|---|---|

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ◉ Descending    ○ Ascending

Display Options: [ All Entries ▼ ]

---

**04/01/2021** ☐ **Notice of Service**
Plaintiffs Notice of Service; Affidavit of Service; Electronic Filing Certificate of Service.
    **Filed By:** W BEVIS SCHOCK
    **On Behalf Of:** RICHARD EARL BROWN

    ☐ **Summons Personally Served**
Document ID - 21-SMCC-2064; Served To - BARONI, KEVIN M; Server - ; Served Date - 31-MAR-21; Served Time - 00:00:00; Service Type - Special Process Server; Reason Description - Served

**03/25/2021** ☐ **Summons Issued-Circuit**
Document ID: 21-SMCC-2064, for BARONI, KEVIN M.

**03/19/2021** ☐ **Motion Special Process Server**
Plaintiffs Motion for Alias Summons; Request for Appointment of Process Server; Electronic Filing Certificate of Service.
    **Filed By:** W BEVIS SCHOCK
    **On Behalf Of:** RICHARD EARL BROWN

**03/01/2021** ☐ **Summons Returned Non-Est**
Document ID - 21-SMCC-928; Served To - BARONI, KEVIN M; Server - N HOGAN, SERVICE DEPUTY; Served Date - 01-MAR-21; Served Time - 09:00:00; Service Type - Sheriff Department; Reason Description - Non-est; Service Text - ATTY DID VIDEO COURT

**02/17/2021** ☐ **Jury Trial Scheduled**
    **Scheduled For:** 08/23/2021; 9:00 AM ; MICHAEL FRANCIS STELZER; City of St. Louis

**02/05/2021** ☐ **Entry of Appearance Filed**
Entry of Appearance by Hugh A Eastwood; Electronic Filing Certificate of Service.
    **Filed By:** HUGH A EASTWOOD
    **On Behalf Of:** RICHARD EARL BROWN

    ☐ **Summons Issued-Circuit**
Document ID: 21-SMCC-928, for BARONI, KEVIN M.

**02/04/2021** ☐ **Filing Info Sheet eFiling**
    **Filed By:** W BEVIS SCHOCK

    ☐ **Pet Filed in Circuit Ct**
Civil Rights Petition 42 USC 1983, Unlawful Detention, Seizure, Strip Search.
    **Filed By:** W BEVIS SCHOCK
    **On Behalf Of:** RICHARD EARL BROWN

**EXHIBIT**
tabbies
A

Case.net: 2122-CC00279 - Docket Entries

☐ **Judge Assigned**

**2122-CC00279**

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| RICHARD EARL BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| KEVIN MICHAEL BARONI, | ) | Division: |
| in his individual capacity only, | ) | |
| | ) | |
| Serve: at Defendant's next Criminal Ct Date | ) | |
| March 1, 2021, 9:00 a.m. | ) | **JURY TRIAL DEMANDED** |
| Carnahan Court House, Div. 26 | ) | |
| The Honorable Michael J. Colona | ) | |
| 2022-CR01842 | ) | |
| | ) | |
| Defendant. | ) | |

## CIVIL RIGHTS PETITION 42 U.S.C. § 1983
## UNLAWFUL DETENTION, SEIZURE, STRIP SEARCH

Plaintiff Richard Earl Brown, by counsel W. Bevis Schock and Hugh A. Eastwood, states

for his civil rights petition, 42 U.S.C. § 1983, unlawful detention, seizure, strip search.

### Introduction

1.  Plaintiff Richard Brown went to a city Dollar Store. Defendant Kevin Baroni, then a City

    police officer, saw Brown with currency. Baroni may have also targeted Brown for other

    reasons. Brown rode off on his motorized bicycle. Baroni, in his van, chased Brown.

    Brown rode into an alley. Baroni displayed his badge, detained Brown, and accused

    Brown of dealing drugs. Baroni strip searched Brown. Baroni then stole $220 from

    Brown's backpack. The Circuit Attorney has charged Baroni with kidnapping and theft.

    Brown brings Section 1983 claims for unreasonable seizures of his person and property,

    and the strip search.

### Parties

1

2.      Plaintiff Richard Earl Brown is a individual residing in the City of St. Louis.

3.      Defendant Kevin Michael Baroni is an individual who at all relevant times to the
        occurrence was a police officer for the City of St. Louis Metropolitan Police Department.

4.      Brown sues Baroni in his individual capacity only.

**Jurisdiction**

5.      Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 and § 1988, and the
        Fourth Amendment to the United States Constitution.

**Venue**

6.      The events complained of occurred in the City of St. Louis, Missouri, within the Eastern
        Division of this Court.

**Color of State Law**

7.      At all relevant times Baroni acted under color of state law.  Particularly, at all relevant
        times Baroni acted under color of the laws, statutes, ordinances, regulations, policies,
        customs and usages of the State of Missouri, and its political subdivisions.

8.      Baroni exercised power possessed by virtue of state law and that power was made
        possible only because he was clothed with the authority of state law, particularly his
        police badge.[1]

**Jury Demand**

9.      Plaintiff demands a jury trial.

**Facts**

---

[1] *Johnson v. Phillips*, 664 F.3d 232, 239–40 (8th Cir. 2011).

10.   At the time of this incident Brown lived in the south City of St. Louis neighborhood where the incident occurred, worked as a 1099 Employee on local construction projects, and routinely rode his motorized bicycle through the neighborhood.

11.   On November 5, 2019 Brown had a routine work day, including supervising his employer's employees.

12.   In between jobs Brown rode his motorized bicycle to Barnett's Market, a retail store in south St. Louis, near the intersection of Sidney and Virginia, and bought cigarettes.

13.   Brown was wearing his backpack, in which he was storing personal items.

14.   In a roll in a pocket of his backpack Brown had $290 in green cash.

15.   Brown pulled out the roll of cash to pay for the cigarettes.

16.   Brown then put $280 of the $290 back into the pocket of his backpack.

17.   $280 is not a large amount of currency, and therefore does not form probable cause (or arguable probable cause) to indicate drug dealing absent other evidence such as the possession of drugs, inconsistent narratives about the purposes of an individual's travel, unusual interstate travel activity, or the possession of tools and things commonly used in drug dealing to mask narcotic odors, enable trafficking, or facilitate drug-dealing communications.[2]

18.   Brown then left the store.

19.   On information and belief, the events at that store are preserved on video camera.

20.   Brown rode his motorized bike eastbound approximately 15 blocks and then northbound one block to the Dollar Store at Jefferson and Victor (now a Dollar General).

---

[2] *See, e.g., United States v. $39,873.00,* 80 F.3d 317, 319 (8th Cir. 1996); *U.S. v. $141,770.00 in U.S. Currency,* 157 F.3d 600, 603-04 (8th Cir. 1998); *U.S. v. $91,960.00,* 897 F.2d 1457, 1462 (8th Cir. 1990).

3

21. At the Dollar Store Brown purchased approximately $35 worth of food and merchandise.

22. To pay at the Dollar Store, Brown again removed cash from the pocket of his backpack.

23. Brown believes he paid with three $20 bills.

24. After Brown paid for the merchandise he put his change in his shirt pocket and put his roll of cash back in the pocket of the backpack.

25. That left approximately $220 in the roll in the pocket of the backpack.

26. While Brown was handling his cash at both stores, a close observer could have easily observed that Brown was storing his money in a pocket of the backpack.

27. Brown then walked out of the Dollar Store to his motorized bicycle.

28. Brown took off some his outerwear, including a hoodie, because the day had warmed up.

29. Brown could not fit the hoodie into his backpack, and so he put it on the seat of his motorized bicycle.

30. On information and belief, the events at the Dollar Store are also preserved on video camera.

31. On information and belief, Baroni was at the Dollar Store at the time or near the time Brown was at the Dollar Store.

32. Brown rode off on his motorized bicycle westbound on Victor, sitting on the hoodie on the seat.

33. Two blocks later, Brown went around a truck at Texas.

34. As he went around the truck Brown noticed that a van was following him.

35. As Brown continued westbound he noticed that that van was following him at an unreasonably close distance, literally approximately less than a bicycle length behind Brown's motorized bicycle.

4

36.   The van was not marked as a police vehicle.

37.   As Brown went westbound with Fox Park on his right side, he sped up to try to lose the van.

38.   Brown could not go at a high rate of speed because he was sliding around on the hoodie.

39.   Brown was nervous and scared because he felt whoever was in the van intended him harm and might intentionally crash into his motorized bicycle.

40.   At the western end of Fox Park at California, Brown took a right turn northbound on California.

41.   Brown went northbound a block and a half to Shenandoah.

42.   Brown went through the intersection at Shenandoah, and another half block to the westbound alley.

43.   Brown saw workmen on the north side of the alley, whom he thought might protect him and/or be witnesses should untoward events occur.

44.   Brown took a left, westbound into the alley, and traveled approximately 100 feet to a utility pole on the south side of the alley, just before the parking pad at the rear of 2805 Shenandoah.

45.   Upon later investigation Brown believes the workmen were working at 2243 California, the first address on California north of the alley.

46.   The van followed Brown into the alley and stopped on Brown's right, nearly pinning Brown to the utility pole.

47.   Baroni's van window was open.

48.   Brown said to Baroni, words to the effect of:  "What the fuck are you doing?" and "Are you a fucking idiot?"

49.    Baroni, as he sat in his van, flashed a police badge

50.    Brown felt relief, because he believed he was no longer in danger because the occupant
       of the van was a police officer.

51.    Brown said words to the effect of: "What's up?"

52.    Brown got off his motorized bicycle and said words to the effect of: "Let's get this over
       with.  I have people waiting on me."

53.    Brown moved to the west to the parking pad.

54.    Brown took off his backpack and put it on the ground.

55.    As Brown took off his backpack, he took out his cigarettes and put them in his pocket.

56.    As Brown was getting off his motorized bicycle, Baroni stated words to the effect of:
       "You were delivering drugs to a woman in a van at the Dollar Store parking lot."

57.    Brown had had no interaction with a woman in the parking lot of the Dollar Store.

58.    That allegation against Brown was thus known to be false to both of them.

59.    Brown told Baroni words to the effect of: "I was never in the parking lot."

60.    Baroni exited his van.

61.    Baroni asked to see identification and Brown stated, truthfully, that he had no
       identification on him.

62.    Brown saw that Baroni had a pistol in his front waistband.

63.    Brown became scared again.

64.    Brown felt that he was then not free to leave.

65.    At that moment, a reasonable person in Brown's circumstances would not have believed
       he was free to leave.

66.    Brown began looking at his phone.

6

67.  Baroni told Brown to leave his phone alone.

68.  Brown offered his phone to Baroni so Baroni would be able to look at information on the phone and verify that Brown had spent the day working like any other citizen.

69.  The phone had various texts related to his employment and domestic issues such as obtaining dishwasher tablets.

70.  Baroni took the phone and looked at it.

71.  Baroni kept alleging that Brown was dealing drugs.

72.  Brown denied that allegation several times.

73.  Baroni set Brown's phone down near Brown's backpack.

74.  Baroni patted down the outside of Brown's clothing, without the pat down becoming a full pat down, in that Baroni did not pat down the inside of Brown's legs.

75.  Baroni then began searching the backpack.

76.  Baroni emptied Brown's backpack on the ground in an aggressive manner.

77.  Brown's bottom dentures were in the backpack.

78.  From approximately three feet off the ground Baroni dumped on the ground everything that was in the backpack.

79.  The next morning Brown examined his bottom denture to put it in and found that it was broken.

80.  On inference, when Brown dumped out the dentures from the approximately three foot height Baroni caused the bottom denture to break.

81.  Brown's grocery bag blew away toward the east where there was a green dumpster.

82.  Baroni told Brown to chase the grocery bag.

83.  Brown chased the grocery bag, which by then was several feet away.

7

84.    It took a few moments for Brown to retrieve the grocery bag.

85.    When Brown returned with the grocery bag Baroni offered Brown "$200 for a drug
       house."

86.    Brown said he had no information of that kind, and a back-and-forth conversation
       ensued.

87.    Brown kept stating words to the effect of: "You don't know me.  I am well known in the
       neighborhood".

88.    Baroni said words to the effect of: "I am narcotics.  I am undercover.  There are seven of
       us assigned to this neighborhood."

89.    Brown said: "How do you not know me?"

90.    Baroni threatened to take Brown's motorized bicycle, and then had Brown sit on the
       concrete parking pad.

91.    Baroni moved Brown's phone from the area where it had been next to the backpack and
       put it down on the ground leaned up against Brown's shoe.

92.    Brown started smoking a cigarette.

93.    Baroni told Brown to get up and take his clothes off.

94.    Brown decided to use his phone to take videos.

95.    As Brown started to stand up and take videos, Brown took three very short videos of
       Baroni.

96.    Brown quickly sent the videos to his girlfriend.

97.    Brown took off his upper body outerwear down to his bare chest.

98.    Brown was visible to the workmen and cars passing on California.

99.    Brown recalls that a car or two went by on California while he was bare chested.

8

100. Brown was humiliated to be standing in public without a shirt.

101. At that point Brown's girlfriend texted back with words to the effect of: "Who's that; nice tattoos."

102. The beep when the text came in seemed to sidetrack Baroni.

103. Brown did not take off his pants.

104. Baroni searched Brown's pants while Brown was wearing them, including going into the pockets, waistband area and pant legs.

105. Baroni left the area where Brown's backpack was and moved to where Brown was.

106. Baroni grabbed Brown's right arm and said words to the effect of: "You are a junkie. Look at the tracks."

107. Brown has no tracks on his arms.

108. Baroni went behind Brown, and Brown smelled alcohol on Baroni's breath.

109. Baroni seemed to be holding up the pistol in his waistband with one hand, as though the pants alone would not be able to handle the weight of the gun.

110. Baroni then said words to the effect of: "You have no identification on you. Who are you?"

111. Brown stated his name and date of birth.

112. Baroni then took out his own phone and dialed a number and the recipient of the call seemed to answer immediately.

113. Baroni was on the phone for a few minutes, walking around Brown.

114. Baroni seemed to be talking to an administrative person with the police department.

115. Baroni stated into the phone Brown's name and date of birth.

9

116.   Baroni listened for a moment and then stated to Brown "You have a cool birthday."
       Apparently the person on the other end of the phone had remarked that he or she and
       Brown have the same birthday.

117.   Baroni did not ask for back-up.

118.   Several years earlier, at approximately 3:00 a.m., Brown drove to some open fields near
       the riverfront a few blocks north of the McKinley Bridge in order to run his dogs.

119.   At that location at that time, a police officer died.

120.   Brown had run his dogs there many times before, and the security guard had told him that
       was fine.

121.   The area was lit, but not too brightly, by lights on tall light stands.

122.   When Brown had first arrived at the fields, before he crossed the railroad tracks which
       are at the western end of the fields, he had heard what he thought might be a gunshot.

123.   Because gunshots are common in the area and it might not have been a gunshot Brown
       ignored it.

124.   Almost immediately after the gunshot, several people approached Brown from the east.

125.   Some of those who approached him were uniformed police officers.

126.   One officer told Brown to leave and not come back.

127.   Brown followed that instruction at that time and has never been back.

128.   At that time Brown had been living on Von-Phul Street, a few blocks away from the
       location where he had been running the dogs.

129.   The official version of that officer's death is that the officer committed suicide.

130.   A few days later Brown learned from media that the officer had died at that location.

131. Because of the fact that people approached him promptly after he heard the gun shot, Brown has always questioned whether the officer's death was a suicide.

132. A few days before the incident in the alley off California in which Baroni took Brown's money, Brown had been watching the TV show Donnybrook.

133. During the show there were remarks defending the conduct of the police.

134. Soon thereafter, but before this incident, Brown had written on a comment on one of the social media strands related to the Donnybrook show in which he wrote words to the effect of: "If you think they are not corrupt you should investigate the suicide of the cop at the riverfront."

135. Brown asked Baroni whether Baroni knew who he was.

136. Baroni stated that Brown was "Rich Brown from Von-Phul".

137. Baroni said words to the effect of: "I can take you in right now. You have two warrants. I'll let you go. I'll be back to find you. You better have some drug houses for me."

138. The statement about the warrants was false for there was no warrant for Brown's arrest.

139. Brown responded more than once, "I don't live on Von-Phul. I live on California Avenue."

140. Baroni asked for Brown's phone number, and Brown wrote his number on the Dollar Store receipt.

141. Baroni started to move to his van.

142. Brown said: "Do you know Marshal Cole."

143. At that time, Daniel Cole was a marshal who worked security at the Missouri Court of Appeals for the Eastern District in downtown St. Louis.

11

144. A few months earlier Brown had installed granite in Mr. Cole's house and in the course of their relationship Brown had spoken to him about the problem of drugs in the neighborhood.

145. Mr. Cole said he would do what he could to help with the situation.

146. Brown asked Baroni if he knew Marshal Cole because Brown still thought that Baroni might be trying to help clean up the neighborhood.

147. Baroni then looked at Brown, started to get in his van, and wrinkled up the receipt and threw it onto the passenger floorboard of the van.

148. Baroni said Brown was free to go and drove off.

149. On information and belief, the events in the alley were captured on videos.

150. Brown lived then and lives now at 2137 California, approximately two and a half blocks north of the location where Baroni took the money from Brown.

151. Brown rode his motorized bike north on California to his home.

152. Brown arrived home and examined his backpack.

153. Brown discovered that his cash was missing.

154. On inference Baroni stole Brown's cash while Brown was chasing the grocery bag.

155. Brown's loss was approximately $220, that is, the original $280 less the approximately $60 Brown had pulled out to make purchases at the two stores.

156. Brown called 911.

157. Officers reported to Brown's home, and took a report.

158. Two officers walked to the scene, and came back, and then told two officers standing near Brown that the workmen had said they did not see anything.

159. Brown showed the officers the video of Baroni which was on Brown's camera.

12

160. One officer said: "That's a cop."

161. At that point the officers summoned Internal Affairs.

162. The officer who had said "That's a cop" then asked Brown to walk with him to Brown's back porch, and they went there by themselves.

163. On the back porch the officer told Brown that the officer in the video, now known to be Baroni, was "a cop; he's something; I see him around a lot," and "Internal Affairs is on the way and they will try to get you to change your story."

164. Two officers arrived from Internal Affairs, Sgt. Joseph S. Kornberger and Sgt. Tonya Porter.

165. They began recording their interview with Brown.

166. Sgt. Porter showed Brown several badges, including a City of St. Louis Metropolitan Police Department badge.

167. Brown stated truthfully that he did not recognize those badges as being identical to the badge Baroni flashed.

168. During the interview by Internal Affairs Brown felt that the officers were trying to get him to change his story.

169. After that interview of Brown, the Internal Affairs officers left.

170. Later in the day the Internal Affairs officers came back and interviewed Brown again in the back of a police car.

171. During that interview Brown told the Internal Affairs officers about the events at the riverfront years earlier.

172. Brown then showed the Internal Affairs Officers a picture of Baroni which his boss, Susan Herzberg, had obtained from a friend of hers who owned a tattoo parlor nearby.

13

173.   The way Ms. Herzberg had obtained the photo was as follows.  Brown had texted Ms.
       Herzberg while the police were at his house the first time and asked her to come to his
       house.

174.   Ms. Herzberg did so.

175.   Ms. Herzberg met with Brown and he showed her the photo of Baroni which Brown had
       taken while he was being detained, and then texted it to her.

176.   Ms. Herzberg recognized the style of the tattoo on Baroni's arm as being from a local
       tattoo parlor.

177.   Ms. Herzberg knew the owner of that parlor so she called him.  During that call the
       owner stated that he would ask his employees if they knew Baroni and he requested the
       picture of Baroni.  Ms. Herzberg texted him the picture.

178.   The owner then called Ms. Herzberg back and said that Baroni had been there earlier that
       very day getting a tattoo, and had paid cash.

179.   Pursuant to health regulations when a customer gets a tattoo the tattoo parlor must take a
       picture of his identification.

180.   The owner of the tattoo parlor then sent Ms. Herzberg the picture of Baroni's
       identification.

181.   After Brown showed Internal Affairs officers the picture of Baroni with his identification,
       Officer Porter asked Brown where he obtained it.

182.   Brown told her he had received it from his boss, Ms. Herzberg.

183.   The Internal Affairs officers asked Brown to call Ms. Herzberg and he did so and she
       answered.

184. Ms. Herzberg told the officers the story of obtaining the picture of Baroni's identification.

185. Ms. Herzberg told the officers they could not cover it up.

186. Soon thereafter Internal Affairs left.

187. On the day of the incident, after Baroni stole Brown's money, Baroni got a tattoo.

188. On inference in the course of getting the tattoo, Baroni showed the tattoo shop's staff person his driver's license or other identification and the staff person took pictures of Baroni and his driver's license.

189. On inference Baroni used Brown's money to pay for the tattoo.

190. The Circuit Attorney of the City of St. Louis has since filed kidnapping and theft charges against Baroni for Baroni's actions in this incident (*State v. Baroni,* No. 2022-CR01842).

191. Brown's conduct was wholly lawful throughout all the events of that November 5, 2019,

192. Brown has never been charged with any criminal conduct in connection with the incident.

### Neither Reasonable Suspicion Nor Arguable Probable Cause

193. At all relevant times Baroni had neither reasonable suspicion nor arguable probable cause to believe that Brown had committed an offense.

### Fourth Amendment Violations

194. Baroni's conduct violated Brown's Fourth Amendment rights to be free of an unreasonable seizure and/or detention of his person and an unreasonable seizure of his property.

### Damages

195. Brown suffered a seizure and/or detention of his person from the time when Baroni flashed his badge in the alley until the time Baroni drove off.

15

196.   Brown suffered a seizure of his property when Baroni stole Brown's money.

197.   Brown suffered a seizure of his property when Baroni dumped Brown's backpack

contents on the street and broke Brown's dentures.

198.   Brown has suffered:

    a.   Loss of liberty during his seizure and/or detention,

    b.   Loss of approximately $220 cash,

    c.   Loss of the replacement value of the dentures will be approximately $700.00.

    d.   Humiliation,

    e.   Indignity,

    f.   Disgrace,

    g.   Stress,

    h.   Fear,

    i.   Fear and mistrust of law enforcement, and

    j.   Garden variety emotional distress.

199.   Brown has no bills for medical treatment.

### Causation

200.   The actions of Baroni proximately caused Brown's damages, in that but for Baroni's

unconstitutional conduct Brown's damages would not have occurred.

### Compensatory Damages

201.   Brown is entitled to an award of compensatory damages against Baroni, in his individual

capacity, to fairly and justly compensate Brown for the damages Brown sustained.[3]

### Punitive Damages

---

[3] 8th Cir. Model Jury Instructions, 4.50A.

202.  Brown is entitled to an award of punitive damages against Baroni, in his individual

capacity, to punish Baroni for Baroni's malicious or reckless conduct which was

indifferent to the constitutional rights of Brown and was an exercise of power without

any legitimate governmental objective.

### No Qualified Immunity

203.  Baroni had no probable cause or arguable probable cause to justify seizing or detaining

Brown, or for seizing Brown's money or breaking the dentures, for Brown had broken

absolutely no laws.

204.  Brown was a victim of Baroni's crimes.

205.  The right to be free of seizure and/or detention in the absence of either reasonable

suspicion or arguable probable cause is well established.

206.  Baroni's conduct was brutal and offensive.[4]

207.  Baroni had no legitimate governmental objective in seizing or detaining Brown himself

or seizing Brown's property.[5]

208.  No reasonable officer would have thought that seizing a person in order to steal that

person's money was lawful.[6]

---

[4] *Ward v. Steele*, No. 4:17-CV-01371-SPM, 2020 WL 871080, at *3 (E.D. Mo. Feb. 21, 2020), citing *Gerstein v. Pugh*, 420 U.S. 103, 115 (1975).
[5] *Hawkins v. Holloway*, 316 F.3d 777, 784 (8th Cir. 2003).
[6] *Johnson v. Phillips*, 664 F.3d 232, 239 (8th Cir. 2011) (in context of sexual assault by officer). In the notorious case *Jessop v. City of Fresno*, 936 F.3d 937, 941 (9th Cir. 2019), the Ninth Circuit granted qualified immunity to officers who stole over $200,000, but had a warrant to seize the property they stole.  There was no such warrant here.

17

209.   In the alternative, the conduct in question was so egregious and unreasonable that,
       notwithstanding the lack of an analogous decision, no reasonable officer could have
       thought he was acting lawfully.[7]

210.   There was no warrant of any kind giving Baroni's conduct even a glimmer of
       lawfulness.[8]

211.   In the alternative this is the rare obvious case, where the unlawfulness of the officer's
       conduct is sufficiently clear even though existing precedent does not address similar
       circumstances.[9]

212.   Alternatively, Baroni has no qualified immunity because that doctrine is bad law.  It is
       found neither in the text of the 42 U.S.C. §1983 statute, nor in the original intent of its
       drafters.  Historically at common law, and particularly when the Civil Rights Act was
       enacted on April 20, 1871, police officers (unlike, say, judges or prosecutors) did not
       have immunity from suit.[10]  Furthermore, at common law when the statute was enacted,
       police officers were strictly liable for unlawful acts, and good faith was no defense.  (In
       any event, subjective good faith has since been declared irrelevant under an objective

---

[7] *Dockery v. Blackburn*, 911 F.3d 458, 466–67 (7th Cir. 2018).

[8] *Compare Martin v. Howard*, No. 19-10944, at *9 (11th Cir. Jan. 10, 2020) ("available law
provided the official with 'fair warning' that his conduct violated the constitution.")

[9] *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 504 (January 7, 2019), citing *D.C. v. Wesby*,
138 S. Ct. 577, 590 (2018).

[10] *See, e.g.,* William Baude, *Is Qualified Immunity Unlawful?,* 106 Calif. L. Rev. 45, 55 (2018)
("The Court's account of common-law qualified immunity has several historical problems.");
James E. Pfander & Jonathon L. Hunt, *Public Wrongs and Private Bills: Indemnification and
Government Accountability in the Early Republic,* 85 N.Y.U. L. Rev. 1862, 1917 (2010); Donald
L. Doernberg, *Taking Supremacy Seriously: The Contrariety of Official Immunities,* 80 Fordham
L. Rev. 443 (2011).

analysis, and so it is doubtful that qualified immunity reliably distinguishes between officials who are trying their best to abide by the law and those who are not.[11]

213.   Nor do the Supreme Court's policy rationales to protect individual police officers survive real-world experience.  Police officers almost never face individual ruin if sued.  Rather, they are usually indemnified by their employers, and taxpayers or insurers foot the bill if they are held liable.[12]  Nor do concerns for efficiency and scarce judicial resources hold up, since qualified immunity rarely shields police officers from the burdens of litigation. A 2017 survey in the Yale Law Journal shows that few claims are dismissed at the motion to dismiss stage or at summary judgment on qualified immunity grounds.[13]

214.   Thus the Supreme Court case creating qualified immunity[14], and its progeny, are not good law.  Accordingly, Brown has a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law.

### Attorney's Fees

215.   In pursuing his claims under 42 U.S.C. 1983 Plaintiff is incurring reasonable attorney's fees, costs, and non-taxable expenses.

216.   Under 42 U.S.C. §1988 if Plaintiff is the prevailing party he will be entitled to judgment against Baroni for his reasonable attorney's fees, costs, and non-taxable expenses.

### COUNT I
### FOURTH AMENDMENT
### SEIZURE OF PLAINTIFF'S PERSONS

217.   Plaintiff incorporates all prior paragraphs.

---

[11] *Harlow v. Fitzgerald,* 457 U.S. 800, 814 (1982).
[12] Joanna C. Schwartz, *Police Indemnification,* 89 N.Y.U. L. Rev. 885, 912 (2014).
[13] Joanna C. Schwartz, *How Qualified Immunity Fails,* 127 Yale L.J. 2, 36 (2017).
[14] *Pierson v. Ray,* 386 U.S. 547, 557 (1967).

19

218. *First*, Baroni almost ran Brown over and then detained Brown, and

219. *Second*, it was unreasonable for Baroni to have detained Brown because Baroni had not

    even a mistaken suspicion that Brown had committed a crime, and

220. *Third*, as a direct result, Brown was damaged.[15] [16]

221. Brown is entitled to compensatory damages and punitive damages.

222. Baroni is not entitled to qualified immunity.

### Prayer

WHEREFORE, Brown prays for judgment against Baroni for unreasonable seizure of his

person for compensatory damages, punitive damages, 42 U.S.C. § 1988 attorney's fees,

reasonable expenses and taxable court costs, and such other relief as the court finds to be just,

meet and reasonable.

### COUNT II
### FOURTH AMENDMENT
### SEIZURE OF PLAINTIFF'S PROPERTY

223. Plaintiff incorporates all prior paragraphs.

224. *First*, Baroni took Brown's $220 currency and broke Brown's dentures, and

225. *Second*,

    Neither taking Brown's currency and/or

    breaking his dentures

    was reasonable because Baroni did not have even a mistaken suspicion that Brown had

    committed a crime, and

---

[15] For elements of verdict director, *see Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017).
[16] 8th Cir. Model Jury Instructions 4.40.

226. *Third*, as a direct result, Brown was damaged. [17] [18]

227. Brown is entitled to compensatory damages and punitive damages.

228. Baroni is not entitled to qualified immunity.

### Prayer

WHEREFORE Plaintiff Richard Earl Brown prays for judgment against Defendant Kevin Michael Baroni for unreasonable seizure of his property, for compensatory damages, punitive damages, 42 U.S.C. § 1988 attorney's fees, reasonable expenses and taxable court costs, and such other relief as the court finds to be just, meet and reasonable.

### COUNT III
### FOURTH AMENDMENT
### UNCONSTITUTIONAL STRIP SEARCH

229. Plaintiff incorporates all prior paragraphs.

230. *First*, Baroni required Brown to remove his shirt.

231. *Second*, the removal of Brown's shirt was unreasonable because it was not reasonably necessary.

232. *Third*, as a direct result, Brown was damaged.[19]

233. Brown is entitled to compensatory damages and punitive damages.

### Prayer

WHEREFORE Plaintiff Richard Earl Brown prays for judgment against Defendant Kevin Michael Baroni for unreasonable strip search under Missouri state law, for compensatory

---

[17] For elements of verdict director, *see Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017).
[18] 8th Cir. Model Jury Instructions 4.40.
[19] *Pace v. City of Des Moines*, 201 F.3d 1050 (8th Cir. 2000)

damages, punitive damages, 42 U.S.C. § 1988 attorney's fees, reasonable expenses and taxable

court costs, and such other relief as the court finds to be just, meet and reasonable.

Respectfully submitted,

Co-Counsel for Plaintiff

   /s/ W. Bevis Schock   .
W. Bevis Schock, MBE # 32551
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

   /s/ Hugh A. Eastwood   .
Hugh A. Eastwood, MBE # 62058
Attorney at Law
7911 Forsyth Blvd., Ste. 300
St. Louis, MO 63105
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 228 0107 eFax (preferred during COVID-19)
(314) 863 5335 Office Fax

**SHERIFF'S FEE PAID**

## IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>MICHAEL FRANCIS STELZER | Case Number: 2122-CC00279 | Special Process Server 1 |
|---|---|---|
| Plaintiff/Petitioner:<br>RICHARD EARL BROWN | Plaintiff's/Petitioner's Attorney/Address<br>W BEVIS SCHOCK<br>7777 BONHOMME AVE<br>SUITE 1300<br>ST. LOUIS, MO  63105 | Special Process Server 2<br><br>Special Process Server 3 |
| vs. | | |
| Defendant/Respondent:<br>KEVIN M BARONI | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp) |

### Summons in Civil Case

**The State of Missouri to: KEVIN M BARONI**
        **Alias:**
SERVE AT THE CARNAHAN COURT HOUSE,
DIV 26,
03/1/21, 9:00AM, 2022-CR01842
ST. LOUIS, MO  63103

*COURT SEAL OF*

*CITY OF ST LOUIS*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

**February 5, 2021**
_____
Date

_____
Further Information:

*Thomas Kloppinger*
_____
Clerk

### Sheriff's or Server's Return
**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**
Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
                                              Date

_____
Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $   10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* **Document Id # 21-SMCC-928**      1 of 1      Civil Procedure Form No. 1; Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

CIRCUIT COURT OF THE CITY OF ST. LOUIS
22ND JUDICIAL CIRCUIT
STATE OF MISSOURI

RICHARD EARL BROWN,                    )
                                        )
      Plaintiff,                      )
                                        )         No. 2122-CC00279
v.                                      )
                                        )         Division 6
MICHAEL R. BARONI,                      )
                                        )
      Defendant.                      )

## Entry of Appearance

        Hugh A. Eastwood, Attorney at Law, hereby enters his appearance as co-counsel for

Plaintiff Richard Earl Brown.

Respectfully submitted,

Co-Counsel for Plaintiff

*/s/ Hugh A. Eastwood*
Hugh A. Eastwood, MBE # 62058
7911 Forsyth Blvd., Ste. 300
St. Louis, Missouri 63105-3825
hugh@eastwoodlawstl.com
314 809 2343
(314) 228 0107 eFax (preferred during COVID-19)
(314) 863 5335 Office Fax

### CERTIFICATE OF SERVICE

The undersigned certifies that on 2/05/2021 (s)he served this document on all counsel of record
by Missouri Case Net.

*/s/ Hugh A. Eastwood*



**SHERIFF'S FEE PAID**

## IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>MICHAEL FRANCIS STELZER | Case Number: 2122-CC00279 | Special Process Server 1 |
|---|---|---|
| Plaintiff/Petitioner:<br>RICHARD EARL BROWN | Plaintiff's/Petitioner's Attorney/Address<br>W BEVIS SCHOCK<br>7777 BONHOMME AVE<br>SUITE 1300 | Special Process Server 2 |
| vs. | ST. LOUIS, MO 63105 | Special Process Server 3 |
| Defendant/Respondent:<br>KEVIN M BARONI | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD | |
| Nature of Suit:<br>CC Other Tort | SAINT LOUIS, MO 63101 | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **KEVIN M BARONI**
                          **Alias:**

SERVE AT THE CARNAHAN COURT HOUSE,
DIV 26,
03/1/21, 9:00AM, 2022-CR01842
ST. LOUIS, MO 63103

**COURT SEAL OF**

*(seal)*

**CITY OF ST LOUIS**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**February 5, 2021**                         *Thomas Kloppinger*

_____                   _____
Date                                              Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).
☒ other: _No SHOW - ATTORNEY DID VIDEO COURT_____

                                                                                    (address)
Served at _____
in _____  (County/City of St. Louis, MO) on  _3-1-21_ (date) at _9:22_ (time).
     (County/City of St. Louis, MO)

_LT. NEIL J. HOGAN_                          _(signature)_
Printed Name of Sheriff or Server                Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____       _____
                              Date                          Notary Public

**Sheriff's Fees, if applicable**
Summons                          $_____
Non Est                          $_____
Sheriff's Deputy Salary
Supplemental Surcharge           $___10.00_____
Mileage                          $_____ (_____ miles @ $._____ per mile)
Total                            $_____

A copy of the summons and a copy of the petition must be served on each defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | | | |
|---|---|---|---|
| RICHARD EARL BROWN, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | No. | 2122-CC00279 |
| v. | ) | | |
| | ) | Division: | 1 |
| KEVIN MICHAEL BARONI, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**PLAINTIFF'S MOTION FOR ALIAS SUMMONS**

Plaintiff Richard Earl Brown, by counsel W. Bevis Schock and Hugh A. Eastwood, states

for his Motion for Alias Summons:

1.      The original summons in this case was returned non est on March 1, 2021.

2.      Concurrent with this filing Plaintiff is moving for service by special process server.

WHEREFORE, Plaintiff moves the court for an alias summons.

Respectfully Submitted,

Co-Counsel for Plaintiff

  /s/ W. Bevis Schock   .
W. Bevis Schock, MBE # 32551
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

  /s/ Hugh A. Eastwood   .
Hugh A. Eastwood, MBE # 62058
Attorney at Law
7911 Forsyth Blvd., Ste. 300
St. Louis, MO 63105
heastwood@eastwoodlawstl.com
Fax:    314-863-5335
Voice: 314-809-2343

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 19, 2021 he served this document on:
All counsel of record
  /s/ W. Bevis Schock  .
The service method was:  electronic filing

2



**SPECIAL PROCESS SERVER**

## IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>MICHAEL FRANCIS STELZER | Case Number: 2122-CC00279 | Special Process Server 1<br>W STAGE |
|---|---|---|
| Plaintiff/Petitioner:<br>RICHARD EARL BROWN | Plaintiff's/Petitioner's Attorney/Address<br>W BEVIS SCHOCK<br>7777 BONHOMME AVE<br>SUITE 1300<br>ST. LOUIS, MO 63105 | Special Process Server 2 |
| vs. | | Special Process Server 3 |
| Defendant/Respondent:<br>KEVIN M BARONI | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp) |

### Alias Summons in Civil Case

The State of Missouri to: KEVIN M BARONI
        **Alias:**

WHEREVER HE MAY BE FOUND

COURT SEAL OF

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

CITY OF ST LOUIS

**March 25, 2021**

_____       _Thomas Kloeppinger_
Date                          Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____      _____
Printed Name of Sheriff or Server       Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

(Seal)

My commission expires: _____      _____
                  Date                  Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

RICHARD EARL BROWN,               )
                                  )
            Plaintiff,            )
                                  )        No.        2122-CC00279
v.                                )
                                  )        Division:   1
KEVIN MICHAEL BARONI,             )
                                  )
            Defendant.            )

### PLAINTIFF'S NOTICE OF SERVICE

Comes now Plaintiff Richard Earl Brown, by and through attorney W. Bevis Schock, and

files Process Server's Affidavit of Service.

Respectfully Submitted,

Attorneys for Plaintiff

  /s/ W. Bevis Schock   .
W. Bevis Schock, MBE # 32551
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

### CERTIFICATE OF SERVICE

The undersigned certifies that on April 1, 2021 he served this document on:
All counsel of record
  /s/ W. Bevis Schock   .
The service method was:  electronic filing

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

RICHARD EARL BROWN )
                                        )
      Plaintiff, )      Case#: 2122-CC00279
v. )
                                          )      DIVISION: 1
                                        )
KEVIN BARONI )
                                        )
      Defendant. )

## ENTRY OF APPEARANCE

COMES NOW Brian P. Millikan and enters his appearance on behalf of Defendant Kevin Baroni.

Respectfully Submitted,

**MILLIKAN LAW OFFICE, LLC**

By: */s/ Brian P. Millikan*
      Brian P. Millikan, #50900
      12180 Old Big Bend Road
      Kirkwood, Missouri 63122
      314-621-0622 (Telephone)
      866-640-0289 (Telefacsimile)
      ***ATTORNEY FOR DEFENDANT***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a copy of this Entry of Appearance was sent to the Plaintiff's Counsel on April 29, 2021 via the Court's electronic service system.

                      */s/ Brian P. Millikan*